UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Utility Audit Group, John L. O'Kelly and Christine
O'Kelly,

                               Plaintiffs,

                  -against-

Capital One, N. A., Designs for Finance, Inc.,
Pointe Benefit Consultants, LLC., Michael
Sonnenberg and Jack R. Broesamle, Jr.,

                         Defendants.
------------------------------------------------------------X

Civil Action No.
**2:14-cv-00097 (SJF) (GRB)**

RULE 15 (a)(B)
AMENDED COMPLAINT

     John L. O'Kelly, attorney for the plaintiffs, as and for the plaintiffs amended

complaint, made pursuant to FRCP 15 (a)(B), respectfully alleges as follows:

<u>PARTIES</u>

    1.  At all pertinent times, plaintiff Utility Audit Group ("UAG") has been a partnership

with its principal place of business in Nassau County, New York.

    2.  At all pertinent times UAG has done business in the State of New York.

    3.  At all pertinent times, UAG has had two partners, i.e., the plaintiffs

John L. O'Kelly and Christine O'Kelly, husband and wife.

    4.  In or about December, 1998 UAG became a participating employer in the

BETA Multiple Employer Variable Death Benefit Plan and Trust ("BMEP", "Beta Plan

Trust" or "Plan").

    5.  At all pertinent times, UAG was a participating employer of the BMEP.

6. The version of the BMEP Plan adopted by plaintiffs was described as:

M:/PROTOTYP/BETA/TRUST,AGR(c) 1994 Designs For Finance, Inc.

7. The BMET Plan documents, including adoption and other ancillary documents signed by plaintiffs at the time of the adoption of the Plan by plaintiffs, constitute the agreement between plaintiffs and defendants.

8. UAG, as a participating employer, funded the acquisition of life insurance policy #7941349, which was issued by Massachusetts Mutual Life Insurance Company ("Mass Mutual") insuring the life of the plaintiff John L. O'Kelly ("John O'Kelly") and which was held in the Beta Plan Trust.

9. UAG contributed approximately $250,000 to the BMET to fund the acquisition of insurance policy #7941349 which was issued by Mass Mutual insuring the life of the plaintiff John O'Kelly and which was held in the Beta Plan/Trust.

10. At all pertinent times, Mass Mutual life insurance policy #7941349 insuring the life of the plaintiff John O'Kelly has been held in the Beta Plan Trust.

11. At all pertinent times John O'Kelly and Christine O'Kelly have resided in Nassau County, New York.

12. On or about December 21, 1998 plaintiff John O'Kelly UAG became a participating employee in the BMEP.

13. At all pertinent times, John O'Kelly was a participating employee of the BMEP. and was the insured under life insurance policy #7941349 issued by Mass Mutual and held in the BETA Plan Trust.

14. At all pertinent times, the plaintiff Christine O'Kelly was the beneficiary under life insurance policy #7941349 insuring the life of John O'Kelly issued by Mass Mutual and held in the Beta Plan Trust.

15. At all pertinent times the defendant Capital One, N.A. ("Capital One"), or its' wholly owned predecessor/subsidiary North Fork Bank, has been the Trustee of the Beta Plan Trust.

16. At all pertinent times the defendant Capital One, or its' wholly owned predecessor/subsidiary North Fork Bank, has been doing business in New York State at 275 Broadhollow Road, Melville, New York 11747.

17. At all pertinent times, the defendant Designs for Finance, Inc. ("Designs") has been the Sponsor of the Beta Plan Trust.

18. At all pertinent times, the defendant Designs has been doing business in New York State.

19. The defendant Designs is not registered to do business in the State of New York.

20. The defendant Designs has not been registered to do business in the State of New York at all pertinent times.

21. At all pertinent times, the President of the defendant Designs has been Michael Sonnenberg.

22. At all pertinent times, the Owner of the defendant Designs has been Michael

Sonnenberg.

23. The defendant Michael Sonnenberg, as owner of Designs, a corporation that was not registered to do business and in good standing in new York at all pertinent times, is personally liable for Designs actions in breach of its obligations to the plaintiffs.

24. The defendant Michael Sonnenberg, as President of Designs, a corporation that was not registered to do business and in good standing in new York at all pertinent times, is personally liable for Designs actions in breach of its obligations to the plaintiffs.

35. At all pertinent times, the defendant Pointe Benefit Consultants, LLC ("Pointe") has been a foreign limited liability company doing business in New York State.

36. At all pertinent times, the defendant Pointe has had its principal place of business at 18530 Mack Avenue, Grosse Pointe Farms, Michigan, 48236.

37. At all pertinent times, the defendant Pointe has been the Administrator of the Beta Plan Trust.

38. At all pertinent times, the defendant Pointe has been the Recordkeeper of the Beta Plan Trust.

39. The defendant Pointe is not registered to do business in New York State.

40. The defendant Pointe has not been registered to do business in the State of New York at all pertinent times.

41. At all pertinent times, the defendant Jack R. Broesamle, Jr. has been the President of the defendant Pointe.

42. At all pertinent times, the defendant Jack R. Broesamle, Jr. has been the Owner of the defendant Pointe.

43. The defendant Jack R. Broesamle, Jr., as owner of Pointe Benefit, a foreign company that was not registered to do business and in good standing in new York at all pertinent times, is personally liable for Pointe Benefit's actions in breach of its obligations to the plaintiffs.

44. The defendant Jack R. Broesamle, Jr., as President of Pointe Benefit, or in his capacity otherwise as an officer of Pointe Benefit, a company that was not registered to do business and in good standing in New York at all pertinent times, is personally liable for Pointe Benefit actions in breach of its obligations to the plaintiffs.

45. At all pertinent times, the defendant Jack R. Broesamle, Jr. has been the Recordkeeper of the Beta Plan Trust.

46. At all pertinent times, the defendant Jack R. Broesamle, Jr. has been the Administrator of the Beta Plan Trust.

47. At all pertinent times, the defendant Jack R. Broesamle, Jr. has been doing business in the State of New York as an individual.

48. At all pertinent times, the defendant Jack R. Broesamle, Jr. has had his principal place of business at 18530 Mack Avenue, Grosse Pointe Farms, Michigan, 4823.

49. Jack R. Broesamle, Jr. is not registered to do business in the State of New York

50. Jack R. Broesamle, Jr. has not been registered to do business in the State of New York at any pertinent time.

51. At all pertinent times, the defendant Capital One, as Trustee, has had fiduciary responsibilities to one or more of the plaintiffs with respect to the management, control, operation and investments of the Trust as set forth, in part, in Articles I, IV, V, VI, VII, X, XI and XII thereof, as adopted by plaintiff, and/or as set forth in later versions of the Trust as may be applicable, and/or as set forth in the combined statements of cash receipts and disbursements compiled by Wiss & Company LLP for the Trust for the years 1998-2012 dated March 27, 2013.

52. At all pertinent times the defendant Capital One, as Trustee, has had contractual responsibilities to the plaintiffs with respect to the management, control, operation and investments of the Trust as set forth, in part, in Articles I, IV, V, VI, VII, X, XI and XII thereof, as adopted by plaintiffs, and/or as set forth in later versions of the Trust as may be applicable, and/or as set forth in the combined statements of cash receipts and disbursements compiled by Wiss & Company LLP for the Trust for the years 1998-2012 dated March 27, 2013.

53. At all pertinent times the defendant Designs, as Sponsor, had responsibility for the actions of the Trustee, Administrator and Record keeper who it had discretionary authority to retain or dismiss at will.

54. At all pertinent times , the defendant Designs had discretionary authority to amend amend the terms of the Plan to obtain favorable tax treatment for participating

employers as per the provisions of Article IX, Section 9.1 of the Plan as adopted by plaintiffs.

55. At all pertinent times the defendant Designs, as Sponsor, had oversight responsibility for the Beta Trust which included discretionary authority with respect to the retention and/or dismissal of the Trustee, Recordkeeper and/or Administrator and with respect to the amendment of the Plan itself to obtain favorable tax treatment.

56. At all pertinent times, the defendant Designs, as Sponsor, has had fiduciary responsibilities to the plaintiffs with respect to the management, control, operation, amendment and/or investments of the Trust as set forth, in part, in Articles I, VII, IX, X, XI thereof, as adopted by plaintiffs, and/or as set forth in later versions of the Trust as may be applicable, and/or as set forth in the combined statements of cash receipts and disbursements compiled by Wiss & Company LLP for the Trust for the years 1998-2012 dated March 27, 2013.

57. At all pertinent times the defendant Designs, as Sponsor, has had contractual responsibilities to the plaintiffs with respect to the management, control, operation, amendment and/or investments of the Trust as set forth, in part, in Articles I, VII, IX, X, XI thereof, as adopted by plaintiffs, and/or as set forth in later versions of the Trust as may be applicable, and/or as set forth in the combined statements of cash receipts and disbursements compiled by Wiss & Company LLP for the Trust for the years 1998-2012 dated March 27, 2013.

58. At all pertinent times the defendant Pointe Benefit, as Administrator and/or Recordkeeper, was responsible for the operation, administration and recordkeeping of

the Beta Trust.

59. At all pertinent times, the defendant Pointe Benefit, as Administrator and/or Recordkeeper, has had fiduciary responsibilities to the plaintiffs with respect to the operation of the Beta Trust as set forth, in part, in Articles I, III, IV, V, VI, VII, VIII, X, XI and XII thereof, as adopted by plaintiffs, and/or as set forth in later versions of the Trust as may be applicable, and/or as set forth in the combined statements of cash receipts and disbursements compiled by Wiss & Company LLP for the Trust for the years 1998-2012 dated March 27, 2013.

60. At all pertinent times the defendant Pointe Benefit, as Administrator and/or Recordkeeper, has had contractual responsibilities to the plaintiffs with respect to the operation of the Beta Plan Trust as set forth, in part, in Articles I, III, IV, V, VI, VII, VIII, X, XI and XII thereof, as adopted by plaintiffs, and/or as set forth in later versions of the Trust as may be applicable, and/or as set forth in the combined statements of cash receipts and disbursements compiled by Wiss & Company LLP for the Trust for the years 1998-2012 dated March 27, 2013.

61. At all pertinent times, the defendant Pointe Benefit, as Recordkeeper, has had fiduciary responsibilities to the plaintiffs with respect to the operation of the Beta Trust.

62. At all pertinent times the defendant Pointe Benefit, as Administrator and/or Recordkeeper, has had contractual responsibilities to the plaintiffs with respect to the operation of the Beta Trust.

63. At all pertinent times, the defendant Michael Sonnenberg, as President of Designs, and/or as the owner of Designs, a corporation that was not active and in good standing in the State of New York at all pertinent times, has had fiduciary responsibilities to the plaintiffs with respect to the operation of the Beta Trust.

64. At all pertinent times the defendant Michael Sonnenberg, as President of Designs and/or as an owner of Designs, a corporation that was not active and in good standing in the State of New York at all pertinent times, has had contractual responsibilities to the plaintiffs with respect to the operation of the Beta Trust.

65. At all pertinent times, the defendant Jack R. Broesamle, Jr., as President of defendant Pointe Benefit, a company that was not active and in good standing in New York at all pertinent times, has had fiduciary responsibilities to the plaintiffs with respect to the operation of the Beta Trust.

66. At all pertinent times the defendant Jack R. Broesamle, as President of defendant Pointe Benefit, a foreign company that was not active and in good standing in New York at all pertinent times, has had contractual responsibilities to the plaintiffs with respect to the operation of the Beta Trust.

67. At all pertinent times, the defendant Jack R. Broesamle, Jr., as Owner of defendant Pointe Benefit, a foreign company that was not active and in good standing in New York at all pertinent times, has had fiduciary responsibilities to the plaintiffs with respect to the operation of the Beta Trust.

68. At all pertinent times the defendant Jack R. Broesamle, as Owner of defendant

Pointe Benefit, a foreign company that was not active and in good standing in New York at all pertinent times, has had contractual responsibilities to the plaintiffs with respect to the operation of the Beta Trust.

69. At all pertinent times, the defendant Jack R. Broesamle, Jr., as the individual Administrator of the Beta Plan Trust, has had fiduciary responsibilities to the plaintiffs with respect to the operation of the Beta Plan Trust.

70. At all pertinent times the defendant Jack R. Broesamle, Jr., as the individual Administrator of the Beta Plan Trust, has had contractual responsibilities to the plaintiffs with respect to the operation of the Beta Trust as set forth, in part, in Articles I, III, IV, V, VI, VII, VIII, X, XI and XII thereof, as adopted by plaintiffs, and/or as set forth in later versions of the Trust as may be applicable, and/or as set forth in the combined statements of cash receipts and disbursements compiled by Wiss & Company LLP for the Trust for the years 1998-2012 dated March 27, 2013.

71. At all pertinent times, the defendant Jack R. Broesamle, Jr., as the individual Recordkeeper of the Beta Plan Trust, has had fiduciary responsibilities to the plaintiffs with respect to the operation of the Beta Trust as set forth, in part, in Articles I, III, IV, V, VI, VII, VIII, X, XI and XII thereof, as adopted by plaintiffs, and/or as set forth in later versions of the Trust as may be applicable, and/or as set forth in the combined statements of cash receipts and disbursements compiled by Wiss & Company LLP for the Trust for the years 1998-2012 dated March 27, 2013 .

72. At all pertinent times the defendant Jack R. Broesamle, Jr., as the individual Recordkeeper of the Beta Plan Trust, has had contractual responsibilities to the plaintiffs

with respect to the operation of the Beta Trust as set forth, in part, in Articles I, III, IV, V, VI, VII, VIII, X, XI and XII thereof, as adopted by plaintiffs, and/or as set forth in later versions of the Trust as may be applicable, and/or as set forth in the combined statements of cash receipts and disbursements compiled by Wiss & Company LLP for the Trust for the years 1998-2012 dated March 27, 2013.

73. At all pertinent times the defendants collectively have had fiduciary responsibilities to the plaintiffs with respect to the Beta Trust as set forth, in part, in Articles I, III, IV, V, VI, VII, VIII, IX, X, XI and XII thereof, as adopted by plaintiffs, and/or as set forth in later versions of the Trust as may be applicable, and/or as set forth in the combined statements of cash receipts and disbursements compiled by Wiss & Company LLP for the Trust for the years 1998-2012 dated March 27, 2013.

74. At all pertinent times the defendants collectively have had contractual responsibilities to one or more of the plaintiffs with respect to the Beta Trust as set forth, in part, in Articles I, III, IV, V, VI, VII, VIII, IX, X, XI and XII thereof, as adopted by plaintiffs, and/or as set forth in later versions of the Trust as may be applicable, and/or as set forth in the combined statements of cash receipts and disbursements compiled by Wiss & Company LLP for the Trust for the years 1998-2012 dated March 27, 2013.

### The BMET (Beta Multiple Employer Plan/Trust)

75. The Beta Multiple Employer Variable Death Benefit Plan and Trust ("BMET","Plan", or "Beta Plan Trust") was established in or around 1994 pursuant to Section 419 A(f)(6) of the Internal Revenue Code ("IRC") of 1986, as amended.

76. The BMET was a multiple employer death benefit plan comprised of life insurance policies insuring the lives of participating employees of the participating employers.

77. Additionally, the BMET contained excess cash contributed by participating employers to be used  to pay the life insurance policy premiums for the benefit of the plan participants and beneficiaries.

78. Plaintiff UAG, as a participating employer,  contributed approximately $250,000 to the BMET.

79.  UAG's contribution, along with the contributions of all the other participating employers of the Beta Plan, was to be invested and managed by the Beta Plan fiduciaries, including the defendants, for the benefit of the plan participants and beneficiaries, including the plaintiffs herein.

80. The proceeds/investment gains of the  Beta Plan were to be used to make premium payments on the life insurance policies held in the Beta Trust with the excess credited to the accounts of the various participating employers, participants and/or beneficiaries, including the plaintiffs herein.

81. The excess cash was to be invested and managed  by the plan fiduciaries, i.e., including the defendants herein, for the benefit of plan participants and beneficiaries.

82. In return for their services to the Plan the fiduciaries the defendants were entitled to administrative and trustee fees employers as set forth in the Plan.

83. Specifically, when UAG became a participating employer, it was agreed the Trustee was entitled to an annual trustee fee of $500 while the Administrator/Record keeper was entitled to an annual administrative fee of $1,250.

84. No other fees to the defendants were authorized under the plaintiffs' Beta Plan.

85. The annual trustee fee of $500 and annual administrator fee of $1,250 were to be the only fees/payments made from the Beta Plan(s) to compensate the Trustee and Administrator/Recordkeeper for their services.

86. Upon information and belief, the other participating employers in the Trust/Plan had provisions similar to plaintiffs' with respect to the payment of annual trustee and administrator fees.

87. Notwithstanding the limited fees authorized by the Beta Plan Trust as set forth above, actual fees and expenses billed to, and paid by, the Beta Plan Trust under the  sponsorship and administration of the defendants increased more than thirty fold, from approximately $41,000 in 1997 to approximately $1.2 million in 2003 and continued at an high rate thereafter, depleting the Plan of most of its assets.

88. This as evidenced by the combined financial statements compiled by Wiss & Company LLP ("Wiss") dated March 27, 2013 for the Plan for the years 1998-2012, referred to supra.

89. The financial statements were compiled by Wiss from information provided by the defendants.

90. The aforementioned expenses and fees were billed by, and paid to the defendants or entities that were selected by the defendants to provide services to the Plan.

91.   The expenses and fees billed to and paid by the Plan included unauthorized expenses and/or fees, along with fees and/or expenses that have been overbilled.

92. Among the unauthorized and/or overbilled expenses and/or fees were unauthorized and/or excessive fees and/or expenses for travel, legal costs, consulting fees, office expenses, administrative expenses, sponsor fees, technology costs, subscription expenses, educational expenses, accounting fees and record keeper fees, among others, upon information and belief.

93.    By overbilling the plan, or causing it to be overbilled, or approving the payment of overbillings, the defendants depleted the cash held by the Trust for the benefit of participants, including the plaintiffs, decreasing the value of the Plan/Trust to those participants, while increasing the value to themselves or to entities they selected to receive payments.

94. Upon information and belief all of the defendants, including the defendants Designs and Sonnenberg, and/or their affiliates, received payments representing improper, excessive and/or unauthorized expenses, costs and/or fees as complained of herein; this as evidenced, in part, by the Wiss financial compilations dated March 27, 2013 concerning the Trust for the years 1998-2012, referred to infra.

95. Additionally, Plan investments underperformed under the sponsorship and

control of the defendants.

96. As a result of the overbilling and underperformance, cash held by the Plan for the benefit of the participants, including the plaintiffs, declined by 88%, from approximately $5 million in 2003 to approximately 600K in 2013.

97.   Plaintiffs own account in the Plan lost more than 90% of its value as a result.

### The BIET(Beta Individual Employer Plan/Trust)

98. In or around January 1, 2003, the defendants caused the BMET to be terminated.

99. In or around January 1, 2003, the defendants caused the BMET to be terminated and replaced by the Beta Individual Employer Plan and Trust ("BIET").

100.   Upon information and belief, the BIET was established pursuant to Section 419 (e) of the IRC.

101.   The defendants lacked the authority to terminate the BMET.

102.   The defendants lacked the authority to establish the BIET.

103.   The termination of the BMET and the establishment of the BIET was done without the consent or authorization of the plaintiffs.

104.   The defendants were without the authority to terminate the BMET or to establish a BIET without the consent and authorization of the plaintiffs.

105.   At the same time the defendants were  terminating the BMET, and replacing it

with the BIET, they appear to have been surreptitiously preparing to terminate the newly formed BIET as well.

106.    This without informing plaintiffs, or others similarly situated, of their plans to do so.

107.    Thereafter, in or around  April, 2013, the defendants undertook to terminate the BIET. This as first set forth in the defendant Pointe Benefit's memo to participating employers dated April 9, 2013 and a subsequent letter from Pointe Benefit dated July 16, 2013.

108.    Prior to their decision to terminate the BIET, the defendants caused the assets of the BIET to become depleted.

109.    Prior to their decision to terminate the BIET, the defendants "milked" the assets of the BIET for their own benefit, and/or the benefit of those who they retained to provide services to the BIET.

110.    The decision to terminate the BIET was made by the defendants after they had so reduced the cash assets of the Plan that it was no longer profitable to them to continue to participate in its administration.

111.    The decision to terminate the Beta individual employer plan was made by the defendants in their own interests, not in the interest of plan participants, as required.

112.    The defendants have no authority to terminate the BIET.

113.    The defendants have no authority to terminate the BIET without the authorization and consent of the plaintiffs.

114.    The defendants have no authority to terminate the BIET without the authorization and consent of the plaintiffs and other BIET participants similarly situated.

115.    The defendants do not have the authorization and consent of the plaintiffs to terminate the BIET.

116.    The defendants do not have the authorization and consent of other BIET participants similarly situated to the plaintiffs to terminate the BIET.

117.    The defendants are terminating the  BIET for their own benefit, without having the authorization or consent of the plaintiffs or, upon information and belief, other similarly situated BIET Plan participants, to do so.

118.    Plaintiffs have sustained, and will continue to sustain, ongoing damages as a result of the defendants decision to terminate the BIET.

119.    In this regard the defendants have improperly billed, and are continuing to improperly bill, the BIET for the costs of its unauthorized termination by defendants.

120.    Previously the defendants had improperly billed the BMET for the costs of its unauthorized termination by the defendants.

121.    Additionally, the defendants overbilled the Plan in numerous other ways, as aforementioned, with the result that the Plan's cash on hand, which was in excess of $3.3 million in 1998 when plaintiffs became Plan participants, has been reduced to $600,000, or less. This as set forth in the Wiss documents, referred to supra.

122.   Moreover, the defendants termination of the BIET will have adverse tax consequences for the participants of the BIET, including the plaintiffs.

123.   In this regard, as a result of the proposed termination of the BIET by the defendants, plaintiffs will incur tax liabilities and/or other expenses, including accounting and legal costs/expenses, that they would not otherwise incur.

124.   Despite this, defendants have made no provision to compensate plaintiffs or others similarly situated for the damages caused, and to be caused, plaintiffs and others similarly situated per defendants unilateral decision to terminate the BIET.

125.   At all pertinent times, the defendants collectively controlled all aspects of the BMET and BIET Plans, including the collection and disbursement of Plan assets, the investment of Plan assets, the billing of the Plan for costs and fees, the amenmdnet of the Plan and the payment by the Plan of costs and fees billed to it.

126.   The defendants have failed to provide an adequate accounting of the investment returns of the BMET from the time of its inception until its unauthorized termination on or about January 1, 2003.

127.   The defendants have failed to provide an adequate accounting of the expenses and fees billed to, and paid by the BMET while under the control and direction of the defendants from the time of its inception until its termination on or about January 1, 2003.

128.   The defendants have failed to provide an adequate accounting of the investment returns of the BIET from the time of its inception on or about January 1, 2003

to date.

129.    The defendants have failed to provide an adequate accounting of the

expenses and fees billed to, and paid by the BIET while under the control and direction

of the defendants  from the time of its inception on or about January 1, 2003 to date.

130.    Specifically, the defendant Trustee failed to provide annual financial statements

to participating employers, including the plaintiff UAG, as required pursuant to the

terms of Article VII, Section 7.06 of the BIET as established by the defendants on or

about January 1, 2003. In pertinent part that provision required as follows:

> 7.06 The Trustee's Accounting. . . . .  Within sixty (60) days following each
> December 31, or following the close of such other annual period as may be
> agreed upon between the Trustee and the Recordkeeper, and within sixty (60)
> days after the removal or resignation of the Trustee, the Trustee shall file with
> the Recordkeeper and Employer, a written report setting forth all investments,
> receipts, disbursements, and other transactions effected by the Trustee during
> the period ending as of such December 31, or other annual period or to the date
> of such removal or resignation, as the case may be, including a description of all
> investments purchased and sold with the cost and net proceeds of such purchases
> or sales (accrued interest paid or received being shown separately) and showing
> all cash securities and other property held at the end of such period. . . . . .

131.    No such reports as required by Section 7.06 were provided by the defendant

Trustee to the plaintiffs, in breach of its obligation.

132.    Instead, simultaneous with the defendants announcement they would be

terminating the Trust, defendants provided the non-audited financial compilations of

the Wiss Company, referred to above. This was the first time defendants provided

plaintiffs any financial statements concerning the Trust. In short, defendants actively

kept plaintiffs "in the dark" concerning their financial activities with respect to the Trust

and the financial condition of the Trust until it (improperly) decided to terminate it.

133.    Defendants decisions to terminate the BMET and  the BIET were made without authority and without the authorization or consent of the plaintiffs.

134.    The defendants have not operated the BMET or BIET in the best interests of the plaintiffs, or other similarly situated plan participants and beneficiaries, as required by their fiduciary and/or contractual obligations .

135.    The defendants have and had fiduciary obligations to the plaintiffs and to other participants with respect to the operation of the BMET and BIET Plans.

136.    The defendants have and had contractual  obligations to the plaintiffs and to other participants with respect to the operation of the BMET and BIET Plans.

137.    The defendants have knowingly breached their fiduciary and/or contractual obligations to the plaintiffs by, among other actions: undertaking in 2013 to terminate the BIET; failing to provide for the indemnification and/or other compensation of plan participants as a consequence of the negative tax and other financial consequences that plaintiffs, and other plan participants will experience as a result of the BIET's improper, unauthorized termination; failing to provide an appropriate accounting of their activities with respect to the BIET; overbilling the BMET and BIET for services, and/or causing the BMET and BIET to overpay for services rendered by themselves and others; improperly billing and overbilling plaintiffs and other similarly situated for expenses incurred in connection with the improper termination of the BIET; improperly, without authority borrowing against Plan assets to pay expenses improperly incurred in connection with the termination of the BIET; billing the BMET and BIET for improper

expenses and/or services, and/or causing the BMET and BIET to pay for improper expenses and/or services rendered by themselves or others; making payments for overbilled and/or otherwise unauthorized or improper expenses; directing others to make payments for overbilled and/or otherwise unauthorized or improper expenses; retaining service providers who have overbilled the BMET and/or BIET for fees and/or expenses; approving the overpayment of fees and/or expenses by the BMET and/or BIET; failing to appropriately monitor and manage BMET and/or BIET Plan assets; failing to provide annual financial statements as required; improperly amending the terms of the Plan without having authority to do so, including but not limited to the improper amendment of termination and fee and expense provisions of the Plan; improperly undertaking to terminate the Plan without having the authority to do so; depleting the assets of the Plan; depleting the assets of the Plan for the benefit of the defendants to the detriment of plaintiffs; failing to appropriately monitor and manage the investment and/or expenditure of BMET and/or BIET Plan assets; failing to appropriately account for their activities with respect to the BMET or for the activities of the BIET; failing to timely and appropriately account for their activities with respect to the BMET or for the activities of the BIET; failing to operate/manage the BMET in the best interests of the plaintiffs and/or others in the Plan similarly situated; failing to operate/manage the BIET in the best interests of the plaintiffs and others in the Plan similarly situated, as required; terminating the BMET; failing to provide an appropriate accounting of their activities with respect to the BMET or the activities of the BMET; and/or in otherwise breaching its obligation to the plaintiffs and others similarly situated.

138.    That as a result of the imminent termination of the BIET by defendants, plaintiffs, in

addition to the damages incurred to date per the actions of the defendants as stated supra, will incur tax and other liabilities, expenses and/or damages they would not otherwise incur.

139.    That as a result of the improper billing of the Beta Trust by defendants and/or others selected by defendants to provide services to the Plan, the defendants failure to appropriately manage the investments of the Trust, the improper termination of the BMET Plan, the proposed improper/unauthorized termination of the BIET Plan, and/or as the result of other improper actions and/or inactions of the defendants, plaintiffs account has lost most of its value.

140.    As a result of the foregoing, plaintiffs have been damaged and will continue to be damaged by defendants breaches of its obligations to the Beta Plan and its participants.

141.    Upon information and belief, the version of the BMET that was in effect and adopted by plaintiffs when they became plan participants was designated: M:\PROTOTYP/BETA/TRUST.AGR©.`1994 Design For Finance Inc.

142.    The version of the Plan adopted by plaintiffs provided in Article IX, Section 9.1, with respect to the amendment of the Plan, as follows:

> 9.1 **AMENDMENT.** Except as herein limited, the Sponsor shall have the right to amend this Plan at any time to any extent that it deem advisable so that changes in the Code, regulations, revenue rulings, other guidance published by the Internal Revenue Service, or changes necessary to obtain a favorable tax treatment with respect to the Plan may be applied to all Employers.

143.    At the time plaintiffs became participants in the Trust, there was no provision permitting the amendment of the Plan except as set forth in Section 9.1

144.   At the time plaintiffs became participants and/or beneficiaries under the Plan, there was no provision permitting the amendment of the plan by anyone other than the sponsor and the participating employee. This as set forth in Archive IX, Section 9.1.

145.   At the time plaintiffs became participants in the Trust, the Sponsor was permitted to amend the Trust only to obtain favorable tax treatment for all employers and for no other purpose.

146.   At the time plaintiffs became participants in the Trust, there was no provision permitting the amendment of the Plan by the Record keeper or by the Trustee under any circumstances.

147.   At no time did plaintiffs consent to any change in the "amendment" provisions of the Trust as set forth in Section 9.1.

148.   At no time did plaintiffs knowingly consent to any change in the amendment provisions of the Trust as set forth in Section 9.1.

149.   The defendants Designs and Sonnenberg thereafter, improperly and without authority to do so, altered the "amendment" provisions of the plan to permit amendment, modification and deletion of the terms of the Plan by the Recordkeeper, as well as amendment of the Adoption Agreement by the Sponsor. This as set forth in Article VI, Section 6.02 of the version of the Plan dated January 1, 2003.

> 6.02   Amendment
>
> (a) The Recordkeeper, as agent of and on behalf of the Employer, and without the need to obtain any further authorization, may from time to time amend, modify or delete, in whole or in part, any provision of the Plan or the Employer's Adoption Agreement; provided, however,

(i)    That no amendment may be made to this Plan which shall change or alter the fundamental purpose of the preface hereof;

(ii)    That no amendment to this Plan which has the effect of increasing the duties, obligations or responsibilities of the Trustee shall be adopted or become effective without the written consent of the Trustee; and

(b) The Employer and Plan Sponsor, with the Recordkeeper's approval, may from time to time amend any provision of its Adoption Agreement.

150.   The provisions of Section 6.02 were improper, were unauthorized and are void.

151.   The defendants Designs and Sonnenberg breached their obligations to the plaintiffs by amending the Plan to include the provisions set forth in Section 6.02, referred to supra.

152.   Defendants Designs and Sonnenberg breached their obligations to the plaintiffs by amending the Plan to include the provisions of Section 6.02 as set forth supra.

153.   At the time plaintiffs became participants and/or beneficiaries under the Plan, it was anticipated that the Plan would continue indefinitely.

154.   At the time plaintiffs became participants and/or beneficiaries under the Plan, only the employer was authorized to terminate the Plan; this pursuant to Article X, Section 10.1of the Plan which provided as follows:

**10.1 <u>RIGHT TO TERMINATE</u>**
It is expected that this Plan and the provision of Benefits hereunder to Participants and their Beneficiaries will continue indefinitely, but the continuance of this Plan is not assumed as a contractual obligation of any Employer. The Employer shall have the right at any time, and without the consent of any party, to terminate this Plan as to the Employer's Employees by action of the Employer's Board, management committee, advisory committee or other designated decision making body.

155.   Neither the Trustee, Recordkeeper or Sponsor had the right to  terminate the Plan at the time plaintiffs became participants in the Plan.

156.    Nor did the Plan contain any provision at that time that would have permitted its amendment to grant the right to terminate to the Trustee, Recordkeeper of Sponsor.

157.    At the time plaintiffs became participants in the Plan that it was understood that the indefinite continuance of the Plan was a continual obligation of the Trustee, Recordkeeper and Sponsor, absent the discontinuance of the Plan by the Employer.

158.    Thereafter, the defendants Designs and Sonnenberg, acting improperly and without authority to do so, amended the terms of the Plan to disavow any contract obligations of the Trustee or Recordkeeper for the continuance of the Plan. This per Article VI, Section 6.01 of the version of the Plan dated January 1, 2006, which was not contained in the Plan as adopted by plaintiffs,  which provides as follows:

> **6.01 Permanency:** It is the expectation that this Plan and Trust and the payment of contributions hereunder, will be continued indefinitely; but continuance of the Plan and of the Trust is not assumed as a contractual obligation of the Employer, the Trustee, or the Recordkeeper.

159.    Defendants improperly amended the terms of the Plan as set forth in Section 6.01 supra in preparation for terminating the Plan after "milking" it of its assets, as alleged in the within complaint.

160.    Plaintiffs never consented to any amendment of the Plan with respect to Termination as set forth in Section 6.01.

161.    Plaintiffs never knowingly consented to any amendment of the Plan with respect to termination as set forth in Section 6.01.

162.    The provisions of Section 6.01 were unauthorized and are void

163.    Defendants Designs and Sonnenberg breached their obligations to the plaintiffs by amending the Plan to include the provisions of Section 6.01 as set forth supra.

164.    When plaintiffs became participants in the Plan, Trustee Fees were to be determined as set forth pursuant to the provisions of Article XI, Section 11.3 of the Plan. That section provided as follows:

> **11.3 PAYMENT OF TRUSTEE FEES.** The Trustee will be paid, from the Trust Fund, such reasonable compensation for its services as may be agreed upon from time to time by the Employer and the Trustee. Such compensation shall be paid by the Employer to the extent that the Employer's Allocable Share in the Trust Fund is insufficient to pay such compensation.

165.    When plaintiffs became participants in the Plan, Recordkeeper Fees were to be determined as set forth in Article XI, Section 11.4 of the Plan. That section provided as follows:

> **11.4 PAYMENT OF PLAN RECORDKEEPER FEES.**
> The Recordkeeper shall be paid, from the Trust Fund, such Recordkeeper's fees as may be agreed upon from time to time by the Employer and the Recordkeeper. Such fees shall be paid by the Employer to the extent that the Employer's Allocable Share in the Trust Fund is insufficient to pay such fees.

166.    At the time plaintiffs became participants in the plan there was no provision concerning the payment of Trustee fees other than Section11.3, as set forth supra.

167.    At the time plaintiffs became participants in the Plan, there was no provision in the plan concerning the payment of Recordkeeper fees other than Section 11.4, as set forth supra.

168.    At the time plaintiff became participants in the Plan, there was no provision in the Plan providing for the payment of Recordkeeper expenses.

169.    At the time plaintiff became participants in the Plan, there was no provision in

the Plan providing for the payment of the Sponsor's expenses.

170.    At the time plaintiffs became participants in the Plan, plaintiff agreed to the payment of Trustee fees in the amount of $500 annually.

171.    At the time plaintiff became participants in the plan, plaintiff agreed to the payment of Recordkeeper fees in the amount of $1250 annually.

172.    Plaintiffs never agreed to the payment of any fees except the annual trustee and Recordkeeper fees in the amounts of $500 and $1,250, as stated above.

173.    At no time did plaintiffs agree to the payment of Trustee or Recordkeeper fees in excess of $500 and $1250 annually.

174.    At no time did plaintiffs knowingly agree to the payment of Trustee or Recordkeeper fees in excess of $500 and $1250 annually.

175.    At no time did plaintiffs agree to the payment of the Recordkeeper or Sponsor expenses or any expenses or fees other than the Trustee and Recordkeeper fees, as set forth supra.

176.    At no time did the plaintiffs agree to an amendment of the terms of Plan with respect to fees or expenses.

177.    At no time did the plaintiffs knowingly agree to an amendment of the terms of Plan with respect to fees or expenses.

178.    The defendants Designs and Sonnenberg improperly and without authority to do

so, amended the $500 annual trustee fee provision of the Plan to which the plaintiffs had agreed when they became participants.

179.  This amendment is as set forth in Section 7.14 in the version of the Plan dated January 1, 2006. It provides as follows:

> 7.14 Trustee's Fees and Expenses
>
> (a)  The Recordkeeper and the Trustee from time to time shall agree upon a schedule of fees to evidence the Trustee's charges for its normal services performed. The trustee shall be entitled to be paid:
>
> (i)  reasonable compensation for all services rendered by it (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust);
>
> (ii)  reimbursement, upon request, for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of this Plan (including the reasonable compensation and the expenses and disbursements of its counsel and its agents), except any such expense, disbursement or advance as may be attributable to its gross negligence, violation of ERISA or breach of trust, and
>
> (iii)  to be held harmless from and against any loss, liability or expense incurred without gross negligence, violation or ERISA or breach of trust on its part, arising out of or in connection with the acceptance or administration of this Trust or its duties hereunder, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties.
>
> (b) Any provision hereof to the contrary notwithstanding, if the Recordkeeper fails within thirty (30) day after the date payment is due, to make any payment properly due the Trustees for its reasonable fees, costs, expenses and fees of attorneys, certified public accountants, recognized authorities in their field and agents (not employees of the Trustee) incurred in performance of its duties, the Trustee shall have a lien against the Trust Fund for the amount of all fees, costs, charges and amounts that may be due it from time to time, including, without limitation, any right to indemnification the Trustee may have hereunder, and any right to reimbursement the Trustee may have to recover the amount of any taxes paid by the Trustee that accrue on or become payable with respect to the Trust Fund of its portion thereon. The lien granted the Trustee hereunder should have priority over the claims of any Beneficiary against the Trust Fund.

180.  Defendants improperly, without having the authority to do so, amended the terms of the Plan as set forth in Section 7.14 with respect to Trustee fees and expenses.

181.  Plaintiffs never consented to any amendment of the Plan with respect to Trustee fees and expenses as set forth in Section 7.14.

182. Plaintiffs never knowingly consented to any amendment of the Plan with respect to Trustee fees and expenses as set forth in Section 7.14.

183. The provisions of Section 7.14 were unauthorized and are void.

184. Defendants Designs and Sonnenberg breached their obligations to the plaintiffs by amending the Plan to include the provisions of Section 7.14 as set forth supra.

185. The defendants Design and Sonnenberg improperly and without authority amended the Plan in various ways to permit its termination by defendants and to permit the billing of fees and/or expenses not agreed to by the plaintiffs.

186. The amendments to the Plan are in breach of the defendant Design and/or Sonnenberg's obligations to Plan participants, including the plaintiffs and are void.

187. All the defendants breached their obligations to Plan participant, including the plaintiffs, with respect to the unauthorized and/or excessive billing of the Plan.

188. Specifically, in part, the defendants breached their obligations to the plaintiffs and the Plan with respect to overbilling as follows: Designs and Sonneberg by improperly amending the Plan to permit such overbilling and/or by receiving payment on such overbilling themselves directly or via their affiliates; Pointe Benefit and Broesamle by approving the payment of the overbilling, by directing the payment of the overbilling, by soliciting the services which caused the overbilling, and/or by receiving payments on the overbillings themselves directly , or via their affiliates; and Capital One by making payments for the overbillings, by soliciting the services which

caused the overbilling, and/or by receiving payments on the overbillings itself directly , or via its affiliates.

## First Claim
### Breach of Fiduciary Obligations By The Defendants Under ERISA

189.   Plaintiffs incorporate by reference the statements in paragraphs 1-188 as though fully set forth herein.

190.    Per the foregoing, it is submitted that the defendants, individually and collectively, have breached their fiduciary obligations to the plaintiffs with respect to the BMET and/or BIET pursuant to the provisions of ERISA entitling plaintiffs to relief, including relief  pursuant to, but not limited to, the provisions of 29 USC 1132: (a)(1)(A), (a)(3), (a)(5), (c)(1), (c)(3), (c )(6), (g)(1), (i), (l)(A) and/or (l)(B).

## Second Claim
### Breach of Contractual Obligations By The Defendants Under ERISA

191.   Plaintiffs incorporate by reference the statements in paragraphs 1-188 as though fully set forth herein.

192.    Per the foregoing, it is submitted that the defendants, individually and collectively, have breached their contractual  obligations to the plaintiffs with respect to the BMET and/or BIET pursuant to the provisions of ERISA entitling plaintiffs to relief, including relief  pursuant to, but not limited to, the provisions of 29 USC 1132: (a)(1)(A), (a)(3), (a)(5), (c)(1), (c)(3), (c )(6), (g)(1), (i), (l)(A) and/or (l)(B).

**Third Claim**

<u>Common Law Breach of Fiduciary Obligations By The Defendants</u>

193.    Plaintiffs incorporate by reference the statements in paragraphs 1-188 as though fully set forth herein.

194.    Per the foregoing, it is submitted that the defendants, individually and

collectively, have breached their common law fiduciary obligations to the plaintiffs

with respect to the BMET and/or BIET entitling plaintiffs to relief.

**Fourth Claim**

<u>Common Law Breach of Contractual Obligations By The Defendants</u>

195.    Plaintiffs incorporate by reference the statements in paragraphs 1-188 as though

fully set forth herein.

196.    Per the foregoing, it is submitted that the defendants, individually and

collectively, have breached their common law contractual obligations to the plaintiffs

with respect to the BMET and/or BIET, , including the obligation of good faith and fair

dealing,  entitling plaintiffs to relief

<u>Jurisdiction</u>

197.    The jurisdiction of the Supreme Court is proper in that the monetary relief sought

by plaintiffs and to which they are entitled exceeds the jurisdiction of any lower court

and because plaintiffs demand additional relief, including an accounting and

injunctive relief which cannot be granted by any lower court.

**WHEREFORE**, plaintiffs demand judgment against the defendants jointly and

severally: enjoining the defendants from terminating the BIET; requiring that defendants

render an accounting of their activities with respect to the  BMET and BIET for the period

plaintiffs have been participants, i.e., 1998-present; voiding, with retroactive effect, all amendments made to the Plan by defendants that were not made in accord with applicable Plan provisions; ordering defendants to remit to the Plan all payments improperly made to them and/or their principals or affiliates by the Plan with interest; awarding money damages in an amount to be determined at trial representing the damages that have accrued to plaintiffs' Trust accounts as a result of defendants failure to have appropriately monitored and/or managed the investments of the BMET and/or BIET; awarding money damages in an amount to be determined at trial representing the damages that have accrued to plaintiffs' BMET and BIET accounts as a result of the overbilling by the defendants of the BMET and/or BIET for expenses and/or fees; awarding money damages in an amount to be determined at trial representing the damages that have accrued to plaintiffs' BMET and BIET accounts as a result of the overbilling of fees and/or expenses by entities selected by the defendants to render services to the BMET and/or BIET; awarding money damages in an amount to be determined at trial representing the damages that have and will accrue to plaintiffs' Trust accounts as a result of defendants improper, unauthorized termination of the BMET and/or defendants ongoing improper, unauthorized termination of the BIET;; and/or awarding money damages in an amount to be determined at trial sufficient to fully compensate plaintiffs for the tax liabilities and other costs, including but not limited to additional tax payments, attorney and accounting fees, to be incurred by the plaintiffs as a result of the defendants improper/unauthorized termination of the BMET and/or BIET; and/or awarding interest at the judgment rate on all damage awards; awarding plaintiffs fees, costs and

disbursements on the action, including an award of reasonable attorney fees pursuant to the provisions of ERISA or otherwise together with such other and/or further relief as the Court deems just and proper.

Dated:  Nassau County, New York
        March 10, 2014

_____
JOHN L. O'KELLY, ESQ.
Attorney For All Plaintiffs
Office & Post Office Address
127 Bengeyfield Drive
East Williston, New York 11596
(516) 248-3338
jokelly@optonline.net

TO:   Fox Rothschild LLP
      Attorneys for Defendant
      Pointe Benefit
      100 Park Avenue, Suite 1500
      New York, New York 10017
      (973) 994-7579
      Att: Brian D. Sullivan, Esq.

      Morrison & Foerster LLP
      Attorneys For Defendant
      Capital One
      1290 Avenue of the Americas
      New York, N.Y. 10104-0050
      (212) 468-8000
      Att: Mark David McPherson, Esq.
           Adam Hunt, Esq.

      Baritz & Colman LLP
      Attorneys For Defendant
      Designs For Finance, Inc.
      The Woolworth Building
      233 Broadway
      New York, N.Y. 10279
      Att: David S. Richan, Esq.
           John Sardeisa-Grant, Esq.

      Mound Cotton Wollen & Greengrass
      Attorneys For Defendant

Michael Sonnenberg
One Battery Park Plaza
New York, N.Y. 10004-1486
Att: Barry R. Temkin, Esq.
     Kate Degironimo, Esq.